

Civil Action No. 1:09-0008

In the
United States District Court
for the Southern District of
West Virginia

Beckley

---

Jimmie Meccya Williams,
and others similarly situated
*Plaintiff,*

vs.

George Janis, *Warden*; Dennis Dingus, *Deputy Warden*;
Patrick Belfiore, *Assoc. Warden Security*; Patrick Murphy,
*Education Coordinator* Tina M Ysugi, *Unit Manager*;
Pamela Swann, *Unit Manager*; Harry Kendrick,
*Counselor*; Kimberly Jones *S.C.C. Physician*
Stevens Correctional Center;
795 Virginia Ave.
Welch, West Virginia 24801
*and*
Gordon Lambert, *President*; Carl Urps; Judy Cortellesi
McDowell County Commission,
91 Wyoming St.
Welch, West Virginia 24801
*Defendants,*

---

## CIVIL COMPLAINT

Negligence, Negligent Infliction
of Emotional Distress and Reckless
Disregard for the Safety of Others
causing Physical Injury

---

*Prepared and Submitted by:*

**Jimmie Meccya Williams
Stevens Correctional Center'
795 Virginia Avenue
Welch, West Virginia 24801**

IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT
OF WEST VIRGINIA

BECKLEY

JIMMIE MECCYA WILLIAMS,
AND OTHERS SIMILARLY SITUATED
*Plaintiff(s)*

VS.                                       CIVIL ACTION NO. *1:'09-0008*

GEORGE JANIS, *Warden;*
DENNIS DINGUS, *Deputy Warden;*
PATRICK BELFIORE, *Associate Warden of Security*
PATRICK MURPHY, *Educational Coordinator*
TINA MYSUGI, *Unit Manager;*
PAMELA SWANN, *Unit Manager;*
HARRY KENDRICK, *Counselor;*
KIMBERLY JONES, *S.C.C. Physician*
STEVENS CORRECTIONAL CENTER
and;

GORDON LAMBERT, *President*
CARL URPS, *County officer*
JUDY CORTELLESI, *County officer*
MCDOWELL COUNTY COMMISSION
*Defendant(s)*

CIVIL COMPLAINT NEGLIGENCE, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
AND RECKLESS DISREGARD FOR THE SAFTEY OF OTHERS CAUSING PHYSICAL INJURY

*Preliminary Statement*

This is a civil rights action by Jimmie Meccya Williams (*hereinafter* Plaintiff), a

state prisoner, in a private County Correctional Center, under the power of the County

Commission, for damages and injunctive relief under *42 U.S.C. § 1983*, alleging abuse of

authority, negligence, negligent infliction of emotional distress and reckless disregard

for the safety of others causing physical injury, denial of medical care and cruel and

2

unusual punishment in contravention of Article III, Section 5 of the West Virginia Constitution and the Eighth Amendment of the United States Constitution, as they were  and are prison officials who deliberately inflicted needless and reckless indifference in violation of the Due Process Clause of both Article III, § 10, of the West Virginia Constitution and  the Fourteenth Amendment to the Unit States Constitution.

The West Virginia Supreme Court of Appeals determined the term cruel and unusual punishment cannot be defined with specificity. It is flexible and tends to broaden as society tends to pay more regard to human decency and dignity and becomes, or likes to think that it becomes, more humane. *State ex rel. Pingley v. Coiner*, *155 W. Va. 591, 186 S.E.2d 220, 1972 W. Va. LEXIS 205 (1972)*.

### *Jurisdiction*

1. The court has jurisdiction over the Plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. § 1983.

2. The court has jurisdiction over the Plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. §§ 1331 (a) and 1343.

3. The court has supplemental jurisdiction over the Plaintiff's state law tort claims under 28 U.S.C. § 1367.

4. The court has jurisdiction over the plaintiffs' claims of violation of State Constitutional rights pursuant to West Virginia Code 56-1-1 et seq.

5. The court has supplemental jurisdiction over the plaintiff's state law tort claims pursuant to West Virginia Code 14-1-2 et seq.

## *Parties*

6. The Plaintiff, Jimmie Meccya Williams, was incarcerated at Stevens Correctional Center (*hereinafter* S.C.C.) during the events described in this complaint.

7. Defendant George Janis is the Warden of S.C.C. and is responsible for overseeing and reviewing all administrative functions including, but not limited to, internal movement, and the assembly of any and all devices that makes the top bunk accessible; ensuring that all inmate(s) receive proper and adequate medicinal care, i.e. dental, eye examination and blood work for chronic care. This action is brought against him in his individual and professional capacity.

8. Defendant Dennis Dingus is the Deputy Warden of S.C.C. and is responsible for overseeing the operations of subordinate staff, *i.e.* unit managers, counselors, and correctional officers in the quotidian duties of their professional routine. This action is brought against him in his individual and professional capacity

9. Defendant Tina Mysugi is the unit manager at S.C.C of floors two (2) and three (3) both B and C wing(s) and she is responsible for overseeing the internal movement including, but not limited to fulfilling all medical requirements imposed by healthcare personnel of S.C.C. regarding inmate(s) who have special needs, i.e., bottom bunks, access to elevator etc. This action is brought against in her individual and professional capacity.

10. Defendant Patrick Belfiore, Associate Warden of Security, of S.C.C. and is responsible for overseeing subordinate(s) staff and is responsible for

maintaining a safe environment, and security searches as part of a quotidian routine of this institution.   This action is brought against him in his individual and professional Capacity.

11. Defendant Patrick Murphy, is the Education Coordinator, of S.C.C. and is responsible for overseeing all, but not limited to, educational department, library and law library daily operations within for the entire prison population. This action is brought against him in his individual and professional capacity.

12. Defendant Harry Kendrick is a correctional counselor and is directly responsible for Plaintiff's movement (bedding) on units 3b and 3c. This action is brought against him in his individual and professional capacity.

13. Defendant Kimberly Jones is the Physician at S.C.C. and is responsible for providing adequate medical examination, and authorizing the scheduling of inmate(s) to adequate outside medical care.

14. Defendant Pamela Swann is the Unit Manager over the fourth (4) floor (b) and (c) wing and over unit D2 and D3 and is vested with enormous discretion and influence, internally and externally, in the area of inmate movement and job placement. This action is brought against her in her individual and professional capacity.

15. All the defendants are under the authority of the County Commission and have acted, and continue to act, under color of law at all times relevant to this complaint.

*Facts*

16. On or around the 15th day of July, 2008, I was told to move from S.C.C. 4c unit to 3b. Upon my arrival I noticed that the defendants had me on a top bunk.[1]

17. I informed Ms. Pamela Swan that I had a severe medical injury that prohibits me from being assigned to a top bunk. Ms. Swan then informed me that this situation is only temporary.

18. Shortly thereafter, I filed a grievance regarding my being on a top bunk, but the grievance procedure that was in effect at that time contained many flaws. Hence, the grievance was never properly filed, docketed or processed.

19. The issues that I challenge in the grievances were: (1) that there is no accessibility to and from the top bunk and it possesses a dangerous threat to me every time I have to get off the top bunk. The other issue in the following grievance was: (2) that the Plaintiff was given a medical order for a bottom bunk on the 26th day of August, 2008, but all unit staff personnel including, but not limited to the Deputy Warden of S.C.C., Dennis Dingus, intentionally failed to obey this order which resulted in the Plaintiff sustaining reoccurring injury to his back.

20. All the grievances that were submitted to the unit officer, on duty, were placed in a folder at the desk, which was never prossessed according to Division of Correction (*hereinafter* DOC) policy.

---

[1] Defendant Ms. Swann, has used this same tactic a number of times on different inmate(s): Robert Rogers, Randall Crisco and others. Also, S.C.C. physician, Kimberly Jones as told inmate(s) coming in to this institution that there is at least at eighteen (18) months waiting period because they did not want to disrupt the practice of rendering preferential treatment.

21. After the August, 2008, parole hearings, I again informed the unit staff that I needed a bottom bunk, but was again turned down because of their bias' and prejudicial practices of preferential treatment to a certain class of inmate(s).[practice of racism]

22. On the 15th day of September, 2008, just prior to the commencement of monthly parole hearings, at approximately 0700 hours, Plaintiff apprised defendant Harry Kendrick again of the bottom bunk pass and advised the Defendant that the Plaintiff had been experiencing severe back pain, as a result of the Plaintiff having to constantly jump off the top bunk. The same constituted reckless disregard of the medical order requiring Plaintiff be placed on a bottom bunk, for his medical condition and safety. Defendant Kendrick informed the Plaintiff that he would be given the available bottom bunk since he has a medical order for the same.

23. At approximately 0930 hours, the same day, I observed another white inmate, Ronald Haines, who had no documented medical condition, being moved to the bottom, which was already promise to Plaintiff.

24. Upon observing the inmate Haines being moved the Plaintiff made inquiry as to why a white inmate was being place before him in breach of the promise given earlier that morning.

25. Plaintiff was then informed that he needed to file a grievance expressing the deliberate indifference and racial prejudices that was being blatantly practice.

26. Plaintiff then filed a grievance with the unit staff, however, the Plaintiff was still burdened with the quotidian task of laboring himself to a top bunk that has no accessibility by common means of a ladder.

27. At the end of the day, after the conclusion of the first (1st) day of the monthly parole hearings, Plaintiff notice that there was still an available bottom bunk in the same cell that he was passed over earlier.

28. Plaintiff made inquiry about moving to that bottom bunk but was told that the personnel who had the authority over the movement had already left for the day.

29. Due to the overwhelming amount of prejudices, bias' and practiced racism that is frequently being perform at S.C.C. the Plaintiff was not able to compel the defendants to recognize their obligation of fulfilling the required medical order of assigning Plaintiff to a bottom bunk.

30. As a direct and proximate result of this Defendant negligence and of their intentional reckless disregard of medical orders, as aforesaid, on or around the 16th day of September 2008, at approximately 0330 hours (3:30 a.m.) the Plaintiff fell head first onto the concrete floor, and was knocked unconscious for fifteen (15) to twenty (20) minutes.

31. The shift commander on duty, Lt. Weston, gave an order to a subordinate (name unknown) to call for an ambulance.

32. Upon arrival of the ambulance, nearly forty-five (45) minutes later, which most of that time the Plaintiff was in and out of consciousness. The Plaintiff was then taken to the local hospital where they administered treatment and observed Plaintiff for head, neck and back injuries.

33. Plaintiff suffered a significant bump on the left forehead, and continues to endure back pain, and headaches to this day, and the same is expected to continue indefinitely. The Plaintiff is still experiencing numbness in his

fingertips, right arm, leg, as a proximate result of the fall and has not been advised why this is occurring by the facility physician.

34. On the 22nd day of September, 2008, the institutional physician, Kimberly Jones summoned the Plaintiff to her office and administered a series of sobriety tests. At the conclusion of her tests she deemed that Plaintiff was cleared to go back to general population.

35. Defendant Kimberly Jones never prescribed any medication for pain and she did not offer clear, careful diagnosis of Plaintiff's injuries. Defendant Jones relied solely upon the analysis of the local hospital.

36. As a proximate result of Defendant Jones failure to diagnose the Plaintiff he to endure a long period of severe back pain, headaches, and continuous numbness.

37. Shortly after the Plaintiff was release back into general prison population an appointment was scheduled for the Plaintiff to see a neurologist.

38. The neurologist, Khalid Razzaq, of Bluefield, W.Va. informed the Plaintiff that there is pressure on, a nerve. And that it is probably causing him to have numbness in his fingertips, arm and legs.

39. The Plaintiff then asked the neurologist whether the physician from S.C.C. had made a requisite to have further testing of his back and the neurologist asserted that there was no other request made by Dr. Kimberly Jones of S.C.C.

40. The neurologist asserted that he was also concerned about why the facility physician only made a request to determine the extent of his numbness and not where it derived from.

41. Plaintiff then had to endure several more weeks of pain and had to tried to alleviate the pain by exercising on the recreation yard. But this did not alleviate his problem.

42. It took nearly four (4) weeks for the facility physician to prescribed over the counter "Excedrin," and when Plaintiff was experiencing severe pain in his back the over the counter drugs did not help in the least.

43. The Plaintiff never received any diagnosis from the facility on his visit to the neurologist on or around the 24th day of September, 2008, and still awaits the findings of the neurology report.

44. Hence, the Defendants finally relented to giving the Plaintiff a bottom bunk only after the Plaintiff suffered injuries to both his back and head.

## *Hazardous Conditions*

45. For over two (2) years the defendants operated this facility under extreme hazardous conditions, subjecting every inmate to the potential dangers of severe injuries by not having ladders installed on all the bunks.

46. Inmate(s) had to use flimsy plastic boxes as a stepping stone to either gain access to their top bunk or getting down from it.

47. The plastic boxes are made of soft plastic and if the contents inside the box is not adequate to support the weight of the inmate falls and injuries had frequently occurs.

48. On or around the 8th day of October, 2008, the Plaintiff noticed that S.C.C. started wielding ladder(s) on the bunk bed, but not by a reputable, certified

and license professional. This assignment was being conducted by an inmate, under the supervision the facility maintenance personnel.

49. On or around the 11th day of October, 2008, Plaintiff advised the Warden, George Janis, that there should be a certified and/or license wielder, and that inmates were complaining that the administration needs to take into consideration that the smoke from this particular assignment has causes smoke and other fumes to be inhaled to the general prison population.

50. For over two (2) years the Plaintiff and other inmate(s) had to endure the dangers of willful or negligent practice of being _____ and than having the unit managers overlook these obligatory responsibility and ignore the orders except for inmates he gave preferential treatment.

51. Knowingly requiring the Plaintiff and other inmate(s) to continue to gain access to their top bunk(s) without a ladder show a complete reckless disregard for the Plaintiff and the general prison population's safety.

52. After the Plaintiff sustained injuries to both his head and back due to Reckless Disregard for human safety and the entire prison population the Plaintiff endure constant attack of reprisals from various members of the prison staff and subordinate(s).

53. As the Plaintiff is known for being a legal representative and employed as an inmate legal rep. the Plaintiff received an infraction from a Correctional Officer, Suzanne Racer for "Refusing an Order" on or around the 7th day of November 2008.

54. At this time Unit Manager Pamela Swan told the Plaintiff, that he is not to return to work until he receives a disposition of the infraction.

55. The Plaintiff then notified the Unit Manager that it is not applicable to enforce rules that are not established within the Policy Directive. Hence, the Plaintiff could not go and retrieve any or all of his legal material and transcripts out of the makeshift office.

56. On or around the 17th day of November 2008, the Plaintiff diligently tried to have the a Correctional Officer to contact the administration to give him approval to allow him to go to retrieve his legal material and transcripts. However, it was several additional days before the Plaintiff was allowed to go to his makeshift office and upon his arrival the Plaintiff noticed that his makeshift office had been ransacked.

57. The Plaintiff could not find any of the material that he was working on which related to unsafe conditions at this prison, nor could the Plaintiff find his transcripts of his Kanawha County, Nicholas County trial; and his deposition from a civil action in the United States District Court for the Southern District of New York.

58. The Plaintiff then filed number of grievances, but to no avail did the administration suffice a remedy.

59. On or around the 24th day of November 2008, the Plaintiff sent a written letter the Warden concerning the legal clerk's office being searched, but to date the Warden never responded.

60. The Plaintiff then filed another grievance that Mr. Murphy, who oversee all activities in the educational department, had used racial epithets and stating that "uppity niggers should not have an office when there are staff members who do not have one." But that grievance was never returned

61. The Plaintiff also notified the administration that Mr. Murphy had deprived him his constitutional right to access to the law library, asserting that "I don't like inmate(s) in green."[2]

## *Fire Hazard*

62. The Plaintiff then had to go through many different channels to achieve the objective of gaining access to the law library.

63. Next, the Plaintiff asserts that this facility has him and a number of other inmate(s) living in a state of anxiety due to the administration does not make known what would be the evacuation route in case of a fire.

64. That this administration does not have a secondary means of extinguishing a fire by means of a fire extinguisher. Unit Manager Pamela Swan contends that due to this facility having a "sprinkler system" the fire Marshall asserts that fire extinguishers are not needed.

65. The Plaintiff then informed this administration that they are neglecting to follow federal law in not administering to general prison population frequent practice of fire drills.

## *Clinical Hazard concerning cleaning supplies*

66. In addition, the Plaintiff informed this administration that failure to provide adequate cleaning supplies can result in an outbreak Methycillin Resistant Staphylococcus Aureas also known as staph infection.

67. The Plaintiff filed a number of grievances informing S.,C,C, administration that failing to give inmates adequate cleaning supplies jeopardizes and subject every inmate to this infectious exposure of staph.

---

[2] The Plaintiff was found guilty of two class III rule violation that resulted in disciplinary action labled as "Loss of Privileges" (LOP)

68. The only cleaning suppl[ies] that is afforded to the inmate general prison population is bleach. Even then the inmate(s) cannot have the spray bottles to clean germs of certain inmate(s) that are known to the prison administration as being filthy.

69. Inmate(s) are never given any cleaning solution(s) to help remove dirt, grime and built up bacteria that has accumulated over long periods of time.

### Medical/Dental

70. The Plaintiff has been at this institution for seven (7) months and the blatant and reckless disregard for human safety is insurmountable.  Inmate(s) that are process at this facility never receive proper examinations.

71. Inmate(s), and especially the Plaintiff, have endured countless weeks on end of severe tooth pain and the clinic never affords anything more than either Tylenol or Motrin.

72. The Plaintiff have submitted a number of request to the clinic regarding dental word to date no remedy have been thus afforded to him.

73. Inmate(s) that has come to this facility classified as chronic health care have not received chronic care since being processed here at this institution. And the Plaintiff contends that it is cruel and unusual punishment to operate a prison without rendering adequate medical care.

74. Lastly, the Plaintiff contends that he has not received any notification concerning why he is still experiencing numbness in his extremities, after nearly four months since the accident

75. Also, the Plaintiff would like to state that since his accident that there have been several more accidents where inmate(s) have seriously hurt themselves while trying exit from the top bunk; the names of these inmates are forthwith in the coming weeks.

## *Claims of Relief*

76. The actions of defendant(s) George Janis, *Warden*, Dennis Dingus, *Deputy Warden*; Harry Kendrick, *Counselor*; and Tina Mysugi, *Unit Manager*, placed the Plaintiff in a position where he suffered injuries as a approximate result of their negligence and alternatively their actions were done maliciously, willfully and intentionally, and, alternately the said acts or omissions constituted cruel and unusual punishment in violation of both Article III, Section 5 of the West Virginia Constitution and the Eighth Amendment of the United States Constitution.

77. The defendant(s) of the County Commission, to-wit; Gordon Lambert, *President*; Carl Urps, *County Officer*; and Judy Cortellesi, *County Officer*, neglected their responsibility to ensure that all correctional staff, of the hierarchy of this administration,  were properly trained and supervised to ensure that any practitioners of racism did not gain employment within this facility.

78. The failure of the defendant(s) to promptly act on Plaintiff's medical order clearly shows that deliberate indifference by defendant(s) Dennis Dingus, Deputy Warden; Harry Kendrick, Counselor; Tina Mysugi, Unit Manager; and Pamela Swan, Unit Manager was intentional and contributed to and

proximately caused the above described violation of Article III, Section 5 of the West Virginia Constitution and the Eight Amendment of the United States Constitution reckless carelessness and actual malice with intent to harm.

## COUNT ONE
Negligence/Negligent Infliction of Emotional Distress-
*Janis; Dingus; Kendrick; Mysugi;* and *Swan*

79. Plaintiff realleges and incorporates by reference to paragraphs 1-39 of this Complaint as though specifically set forth hereat.

80. That defendant(s) George Janis, Warden; Dennis Dingus, Deputy Warden; Tina Mysugi, Unit Manager; Harry Kendrick, Counselor; and Pamela Swan, Unit Manager negligently breached the applicable standard of care, professionalism by employing *Civil Complaint negligence, negligent infliction of emotional distress and Reckless Disregard for the safety of others causing Physical injury* , after knowing that a dangerous situation exist; or allowing the Plaintiff to endure continuous pain and discomfort in violation of medical orders.

81. That defendant(s) gross negligence and reckless disregard for the safety of the Plaintiff directly and substantially caused injury and damage to the Plaintiff, Jimmie Meccya Williams, including but not limited to compensable general damages and special damages, including but not limited emotional stress and future medical expenses.

16

## COUNT TWO
Reckless Disregard to the safety of Plaintiff causing Physical Injury-
*Janis; Dingus; Kendrick; and Mysugi*

82. Plaintiff realleges and incorporates by reference paragraphs of this Complaint as though specifically set forth hereat.

83. That defendant(s) Dennis Dingus, Deputy Warden; Tina Mysugi, Unit Manager; Harry Kendrick, Counselor; defendant(s) Janis; Dingus; Kendrick; and Mysugi negligence directly and substantially had a physical impact on the Plaintiff by causing him to endure extreme pain, loss of consciousness, and numbness in his fingertips;

84. That the defendant(s) Dennis Dingus, Deputy Warden; Tina Mysugi, Unit Manager; Harry Kendrick, Counselor negligence directly and substantially related to Plaintiff's infliction of mild concussion, and caused Plaintiff to experience emotional distress and re-occurring over the coming years including but not limited to pain, anxiety, and cost of medical treatment and/or therapy.

## COUNT THREE
Negligently Administering Training of Professional Ethics to Subordinate(s)
*(McDowell County Commission, LAMBERT, URPS, CORTELLESI)*

85. Plaintiff realleges and incorporates by reference paragraphs of this Complaint as though specifically set forth hereat.

86. The defendant(s) of the McDowell County Commission: Lambert Urps, and Cortellesi negligently had or should have had actual knowledge of the risk to the Plaintiff's impending injuries as a result common familiarity that all bunk beds require ladder(s) for access. McDowell County Commission neglected

and continues to neglect proper training to their higher administration *viz.* Dennis Dingus, *Deputy Warden*) with regards to properly implementing medical policy, DOC policy and formal or informal municipal policy of treatment of Plaintiff's situation.

87. Defendant Dingus, acts are directly related to the "custom" being supported for municipal liability. Due to defendant Dingus, being informed by the Plaintiff of his situation directly from the Plaintiff is the nexus that defendant Dingus recklessly disregard the safety and medical order given by S.C.C. medical staff, that the Plaintiff is required to have bottom bunk. As a proximate result of defendant(s) *LAMBERT, URPS, CORTELLESI*, negligence to properly train, educate and screen defendants for racial prejudice directly caused Plaintiff to sustain numerous injuries which may cause undue pain, medical cost, and therapy in the future, including but not limited to loss of work or mormal functions that comes with daily life due to the injuries sustained from the accident as a result of improper training and knowingly operating a facility that is danger to the general prison population.

**WHEREFORE,** Plaintiff requests that the court grant the following:

B. Issue a declaratory judgment stating that:

1) The reckless disregard of the Plaintiff's safety by the defendant(s) Dingus, Mysugi, and Kendrick violated the Plaintiff's rights under both Article III, Section 5 of the West Virginia Constitution and the Eighth Amendment to the United States Constitution and constituted cruel and unusual punishment under both state and federal law.

2) That the defendant(s) failure to take prompt action including injunctive relief to curb the physical injuries sustained to the Plaintiff as a result of defendant(s) neglect and reckless disregard of safety and medical orders where the prison officials employed deliberate indifference, as shown by "knowing and failed to acquiesce" in the unconstitutional behavior of ...subordinates,...persistently violat[ing] a statutory and/or administrative duty in not inquiring into the hazardous conditions set forth by the Plaintiff in his several request and medical order for a bottom bunk.

3) That the court find this continued existence of prison conditions which, themselves, are so injurious to Plaintiff and other prisoner(s) that they amount to a constitutional violation

4) That the defendant(s) actions in failing to provide adequate medical care for the numbness in his digits, violated and continued to violate Plaintiff's rights under both Article III, Section 5 of the West Virginia Constitution and the Eighth Amendment of the United States Constitution.

C. Issue an injunction ordering defendant(s) to-wit: McDowell County Commission, *LAMBERT, URPS, CORTELLESI*, or their agent to:

5) Immediately arrange for the proper construction, with the necessary certification(s), of license practitioners, to begin wielding ladder(s) on all bunk beds consistent with OSHA standards.

6) Afford Plaintiff the necessary medical treatment consistent with neurology for the numbness in his digits, by a medical

practitioner with expertise in the treatment and restoration of function without numbness to his fingertips.

7) Require defendant(s) to carry out without delay the treatment directed by such medical practitioner.

C.  Award compensatory damages in the following amounts:

8) Fifty Thousand dollars ($50,000.00) jointly and severally against defendants *Dingus; Kendrick;* and *Mysugi* for the negligence, negligent infliction of emotional distress and reckless disregard for the safety of others causing Physical injury.

9) Ten Thousand dollars ($10,000.00) jointly and severally against defendants *LAMBERT, URPS, CORTELLESI,* or their agent: *Dingus* for their failure to train, educate and screen the hierarchy for the blatant practice of racial prejudice including but not limited to the continued practice of racial discrimination, infliction of emotional injury resulting from their denial of due process, within the facility, in connection with the Plaintiff's obligatory requirement of bottom bunk *per* institutional mandate and medical order

10) Fifty Thousand Dollars ($50,000.00) jointly and severally against defendant(s) *Dingus, Mysugi, Kendrick,* and *Jones* for the physical and emotional injury resulting from their failure to provide adequate medical accommodations and care.

## D.

11. Award punitive damages against defendant(s) Janis, Dingus, Mysugi, Kendrick, and Jones of Stevens Correctional Center; and Carl Urps, Judy Cortellesi, Gordon Lambert, McDowell County Commission

Respectfully Submitted,

_____

Jimmie Meccya Williams

JMW
CC: File

21

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY

JIMMIE MECCYA WILLIAMS,
AND OTHERS SIMILARLY SITUATED
*Plaintiff(s)*

VS.                                          CIVIL ACTION NO. _____

GEORGE JANIS, *Warden*;
DENNIS DINGUS, *Deputy Warden*;
PATRICK BELFIORE, *Associate Warden of Security*
PATRICK MURPHY, *Educational Coordinator*
TINA MYSUGI, *Unit Manager*;
PAMELA SWANN, *Unit Manager*;
HARRY KENDRICK, *Counselor*;
KIMBERLY JONES, *S.C.C. Physician*
STEVENS CORRECTIONAL CENTER
and;

GORDON LAMBERT, *President*
CARL URPS, *County officer*
JUDY CORTELLESI, *County officer*
McDOWELL COUNTY COMMISSION
*Defendant(s)*

## *CERTIFICATE OF SERVICE*

I, Jimmie Meccya Williams, do certify that I served the foregoing SUMMONS, under F.R.C.P. Rule 4; Complaint (Negligence, Negligence Infliction of Emotional Distress and Reckless Disregard for Safety of other Causing Physical Injury), Plaintiff Williams' Demand for Jury Trial, directed to Defendant(s) GEORGE JANIS, *Warden*; DENNIS DINGUS, *Deputy Warden*; PATRICK BELFIORE, *Associate Warden of Security* PATRICK MURPHY, *Educational Coordinator* TINA MYSUGI, *Unit Manager*; PAMELA SWANN, *Unit Manager*; HARRY KENDRICK, *Counselor*; KIMBERLY JONES, *S.C.C. Physician* STEVENS CORRECTIONAL CENTER and GORDON LAMBERT, *President* CARL URPS, *County officer* JUDY CORTELLESI, *County officer* McDOWELL COUNTY COMMISSION on the above individuals on this 30th

day of December, 2008, by mailing in the regular course of the United States Mail, postage prepaid, addressed as follows to the U.S. District Court for Service by U.S. Marshall.

GEORGE JANIS, *Warden;*
DENNIS DINGUS, *Deputy Warden;*
PATRICK BELFIORE, *Associate Warden of Security*
PATRICK MURPHY, *Educational Coordinator*
TINA M YSUGI, *Unit Manager;*
PAMELA SWANN, *Unit Manager;*
HARRY KENDRICK, *Counselor;*
KIMBERLY JONES, *S.C.C. Physician*
STEVENS CORRECTIONAL CENTER
**795 Virginia Ave**
**Welch, West Virginia 24801**


and

GORDON LAMBERT, *President*
CARL URPS, *County officer*
JUDY CORTELLESI, *County officer*
MCDOWELL COUNTY COMMISSION
**91 Wyoming St.**
**Welch, West Virginia 24801**