## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | |
|---|---|
| **JIMMIE MECCYA WILLIAMS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **GEORGE JANIS,** *et al.***,** | ) |
| | ) |
| **Defendants.** | ) |

Civil Action No. 1:09-0008

### PROPOSED FINDINGS AND RECOMMENDATION

On January 7, 2009, Plaintiff, acting *pro se* and formerly incarcerated at Stevens Correctional

Center in Welch, West Virginia,[1] filed his Application to Proceed *in Forma Pauperis* and Complaint

in this matter claiming entitlement to relief pursuant to 42 U.S.C. § 1983.[2] (Document Nos. 1 and

2.) Plaintiff names the following as Defendants: (1) George Janis, Warden; (2) Dennis Dingus,

Deputy Warden; (3) Patrick Belfiore, Associate Warden of Security; (4) Patrick Murphy, Education

Coordinator; (5) Tina M. Ysugi, Unit Manager; (6) Pamela Swann, Unit Manager; (7) Harry

Kendrick, Counselor; (8) Kimberly Jones, S.C.C. Physician; (9) Stevens Correctional Center; (10)

Gordon Lambert, President; (11) Carl Urps, County Officer; (12) Judy Cortellesi, County Officer;

and (13) McDowell County Commission.[3] (Document No. 1, p. 2.)

---

[1] On February 10, 2009, Plaintiff filed a "Notice of Address Change" stating that he was released on parole. (Document No. 6.) On November 1, 2011, Plaintiff filed an updated Application to Proceed *in Forma Pauperis*. (Document No. 9.)

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[3] Section 1983 claims must be directed at a "person." *See Preval v. Reno*, 203 F.3d 821 (4th Cir. 2000)(unpublished)(finding that the Piedmont Regional Jail is not a "person" under Section 1983); *Roach v. Burch*, 825 F.Supp. 116, 117 (N.D.W.Va. 1993)(stating that the West Virginia

First, Plaintiff complains that Defendants acted with deliberate indifference to his back condition by assigning him to a top bunk. (<u>Id</u>., p. 6.) Specifically, Plaintiff explains that on July 15, 2008, he was moved from Unit 4C to Unit 3B and "defendant had me on a top bunk." (<u>Id</u>.) Plaintiff alleges that he "was given a medical order for a bottom bunk on August 26, 2008, but Defendants continued to refuse to move him to a bottom bunk." (<u>Id</u>.) Plaintiff states that on September 15, 2008, he "apprised defendant Harry Kendrick again of the bottom bunk pass and advised the Defendant that the Plaintiff had been experiencing severe back pain as a result of the Plaintiff having to constantly jump off the top bunk." (<u>Id</u>.) Defendant Kendrick allegedly responded that "Plaintiff would be given the available bottom bunk since he has a medical order for the same." (<u>Id</u>.) Plaintiff, however, states he was not moved to a bottom bunk that day because "personnel who had the authority over the movement had already left for the day." (<u>Id</u>., p. 8.) Plaintiff claims that "[a]s a direct and proximate result of Defendants' negligence and of their intentional reckless disregard for medical orders, as aforesaid, on or around the 16th day of September 2008, at approximately 0330 hours (3:30 a.m.) the Plaintiff fell head first onto the concrete floor, and was knocked unconscious for fifteen (15) to twenty (20) minutes." (<u>Id</u>., p. 8.) Plaintiff acknowledges that he was "taken to the local hospital where they administered treatment and observed Plaintiff for head, neck, and back injuries." (<u>Id</u>.) As a result of the fall, Plaintiff states that he suffered a "significant bump on the left forehead," back pain, headaches, and numbness in his fingertips, right arm, and leg. (<u>Id</u>., pp. 8 - 9.) Plaintiff asserts that on September 22, 2008, Defendant Kimberly Jones released him to general population after administering a series of sobriety test. (<u>Id</u>., p. 9.) Plaintiff acknowledges that

---

Regional Jail Authority is not a "person" under Section 1983). Accordingly, the undersigned finds that the Steven Correctional Center and McDowell County Commission are not "persons" as required by Section 1983.

"[s]hortly after the Plaintiff was released back into general prison population an appointment was scheduled for the Plaintiff to see a neurologist." (Id.) Plaintiff alleges that "[t]he neurologist, Khalid Razzaq, of Bluefield, W.Va., informed the Plaintiff that there is pressure on a nerve and that is probably causing him to have numbness in his fingertips, arm, and leg." (Id.) Plaintiff states he "never received any diagnosis from the facility on his visit to the neurologist on or around the 24th day of September, 2008, and still awaits the findings of the neurology report." (Id., p. 10.) Plaintiff further asserts that "[i]t took nearly four weeks for the facility physician to prescribe over the counter Excedrin when Plaintiff was experiencing severe pain in his back." (Id.) Plaintiff acknowledges that "Defendants finally relented to giving the Plaintiff a bottom bunk only after the Plaintiff suffered injuries to both his back and head." (Id.)

Second, Plaintiff claims "[f]or over two years the defendants operated this facility under extreme hazardous conditions, subjecting every inmate to the potential dangers of severe injuries by not having ladders installed on all the bunks." (Id., p. 10.) Plaintiff explains that "[i]nmates had to use flimsy plastic boxes as a stepping stone to either gain access to their top bunk or getting down from it." (Id.) Although he acknowledges that Stevens Correctional Center started welding ladders on the bunk beds on October 8, 2008, Plaintiff complains that the ladders are not being installed by "reputable, certified, and license professionals." (Id., pp. 10 - 11.) Plaintiff complains that the ladders are being welded by "an inmate under the supervision of facility maintenance personnel." (Id., p. 11.)

Third, Plaintiff alleges that "this facility has him and a number of other inmates living in a state of anxiety due to the administration not making known what would be the evacuation route in case of a fire." (Id., p. 13.) Plaintiff also claims that there is no "secondary means of extinguishing

3

a fire by means of a fire extinguisher." (Id.) Plaintiff states that "Unit Manager Pamela Swan contends that due to this facility having a sprinkler system the Fire Marshall asserts that the fire extinguishers are not needed." (Id.)

Fourth, Plaintiff complains that Defendants are failing to provide adequate cleaning supplies, which "can result in an outbreak of Methcyillin Resistant Staphylococcus Aureas, also known as staph infection." (Id., pp. 13 - 14.) Plaintiff alleges that the "only cleaning supplies that are afforded to inmate general prison population is bleach." (Id., p. 14.)

Finally, Plaintiff states that "[i]nmates, and especially the Plaintiff, have endured countless weeks on end of severe tooth pain and the clinic never affords anything more than either Tylenol or Motrin." (Id.) Based on the foregoing, Plaintiff requests monetary, declaratory, and injunctive relief. (Id., pp. 18 - 21.)

## STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails

to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

### DISCUSSION

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[4] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), *aff'd*, 54 Fed.Appx. 159 (4th Cir. 2003), *cert. denied*, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only

---

[4] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

5

"available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(overruled on other grounds), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved

6

within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving."(Citations omitted)). The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

The West Virginia Division of Corrections' Policy Directive 335.00 establishes procedures whereby state inmates may seek review of complaints which relate to any aspect of their imprisonment. Within 15 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must submit a G-1 Grievance Form to the Unit Manager. The Unit Manager

7

must respond to the inmate's Grievance within five business days. If the Unit Manager's response was unfavorable, the inmate may appeal within five working days to the Warden/Administrator by filing a G-2 Grievance Form. The Warden/Administrator must respond to the appeal, in writing, within five working days. If the Warden/Administrator, in his/her discretion, determines that an investigation is warranted, a final response shall be made to the inmate within 30 working days. If the Warden/Administrator's response was unfavorable, the inmate may appeal within five working days to the Commissioner/designee of the Division of Corrections. The Commissioner must respond to the appeal within ten working days. The administrative process is exhausted when the Commissioner responds to the inmate's final appeal. The entire process takes about 60 days to complete.

In his Complaint, Plaintiff acknowledges that he did not fully exhaust his administrative remedies. (Document No. 1, pp. 6 and 12.) Plaintiff appears to contend that prison staff failed to properly respond to his administrative remedy requests. (Id.) Specifically, Plaintiff states that "I filed a grievance regarding my being on a top bunk, but the grievance procedure that was in effect at that time contained many flaws. Hence, the grievance was never properly filed, docketed or processed." (Id., p. 6.) Plaintiff explains that "[a]ll the grievances that were submitted to the unit officer on duty were placed in a folder at the desk, which was never processed according to Division of Correction policy." (Id.) Policy Directive 335.00 provides that if the Unit Manager or Staff Supervisor fails to answer the G-1 grievance within the time allotted for a reply, "the inmate may file immediately a G-2 Grievance Form utilizing his/her G-1 Grievance Form copy in order to continue the grievance process." If the Warden or Administrator fails to answer to the G-2 Grievance within the time allotted for a reply, "the inmate may submit an appeal to the Commissioner/designee of the Division of Corrections within five (5) working days, excluding weekends and holidays, after . . . the time

8

for the response has passed." Plaintiff, however, failed to consider any absence of a response as a denial and proceed to the next level. After the Unit Manager allegedly failed to respond, Plaintiff filed his instant Complaint. Thus, Plaintiff filed his Complaint without first exhausting his administrative remedies pursuant to the PLRA. The undersigned, therefore, recommends that Plaintiff's Complaint be dismissed in view of his failure to exhaust the administrative remedies provided under the West Virginia Division of Corrections' Policy Directive 335.00 prior to filing his Complaint.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Plaintiff's Application to Proceeding Without Prepayment of Fees (Document Nos. 2 and 9.), **DISMISS** Plaintiff's Complaint (Document No. 1.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo*

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985);

Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94

(4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this

Magistrate Judge.

      The Clerk is requested to send a copy of this Proposed Findings and Recommendation to

Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

      Date: November 21, 2011.

R. Clarke VanDervort
United States Magistrate Judge

10